Michael J. Romano
ROMANO & ASSOCIATES
400 Garden City Plaza, Suite 432
Garden City, New York 11530
(516) 248-8880
*Attorneys for Plaintiffs Sweet Baby Lightning Enterprises LLC*
*and John Slater*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------x

SWEET BABY LIGHTNING ENTERPRISES LLC
and JOHN SLATER,                                                                          VERIFIED COMPLAINT

                   Plaintiffs,                                                        Docket No.

     -against-

KEYSTONE CAPITAL CORPORATION, FRANK NOCITO
and MALCOLM TAUB,

                   Defendants.
---------------------------------------------------------------------------x

        Plaintiffs Sweet Baby Lightning Enterprises LLC ("SBL") and John Slater ("Slater") (collectively, the "Plaintiffs"), complaining of defendants Keystone Capital Corporation ("Keystone"), Frank Nocito ("Nocito") and Malcolm Taub ("Taub") (collectively, the "Defendants"), by their attorneys, Romano & Associates, alleges upon information and belief as follows:

## INTRODUCTION

       1.    This action involves claims for breach of contract, fraud, conversion, unjust enrichment, and violation of New York Debtor Creditor Law.

## PARTIES

       2.    SBL was and is a North Carolina limited liability company domiciled in the State of North Carolina with a principal address at 1209 Snapper Lane, Unit 1, Carolina Beach, North Carolina 28428.

3.      Slater, the lone member of SBL, was and is an individual resident domiciled in the State of North Carolina, with an address at 1209 Snapper Lane, Unit 1, Carolina Beach, North Carolina 28428.

4.      Keystone was and is a corporation with a principal place of business domiciled in the State of Connecticut and authorized to transact business in the State of New York, with an address at 275 Post Road East, Suite 10, #5189, Westport, Connecticut 06881.

5.      Nocito was and is a domiciliary of the State of Connecticut, with an address c/o Keystone Capital Corporation, 275 Post Road East, Suite 10, #5189, Westport, Connecticut 06881.

6.      Nocito is the President and Chief Executive Officer of Keystone.

7.      Taub was and in a domiciliary of the State of New York, with an address c/o Taub & Lewis LLP, 215 Lexington Avenue, New York, New York 10016.

8.      Taub was and is an attorney representing Keystone.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction because the parties consented to jurisdiction within the Courts of the State of New York.

10.      In addition, in being brought pursuant to the Full Faith and Credit Clause, this Court has original jurisdiction under 28 U.S.C. §1332 because it is a civil action wherein: (1) complete diversity of citizenship exists among the parties; and (2) the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

11.      The amount in controversy of this matter exceeds $75,000.00 exclusive of interest and costs because Plaintiffs seek damages for losses sustained as a result of Defendants' failure

to repay $294,250.00 pursuant to that certain Promissory Note executed by Keystone dated August 21, 2019 (the "Note") and Absolute Guaranty of Payment executed by Nocito and Taub dated August 2, 2019 (the "Guaranty").   Thus, the amount in controversy is satisfied for jurisdictional purposes.

12.     The complete diversity requirement is satisfied because Defendants are domiciled in Connecticut and New York while Plaintiffs are domiciled in North Carolina.  Thus, complete diversity exists amongst all of the parties.

13.     Venue is proper within this District under 28 U.S.C. §1391(b)(2) as a substantial part of the events or omissions forming the basis of the claims complained of occurred in this judicial district.

## **FACTUAL ALLEGATIONS**

14.     By the Note, Plaintiffs agreed to loan $100,000.00 to Keystone (the "Loan").

15.     Pursuant to the Note, executed within the State of New York, Plaintiffs transferred the Loan monies to bank accounts of Keystone and/or Taub that were also based in New York.

16.     The interest rate for repayment of the Loan was set at eight (8%) percent.

17.     A late fee was set at five (5%) percent per month.

18.     Actual bridge costs incurred totaled Thirty-Five Thousand ($35,000.00) Dollars.

19.     Attorney's fees incurred by Plaintiffs total Thirty-Five Thousand ($35,000.00) Dollars.

20.     As such, the total amount owed currently stands at Two Hundred Ninety-Four Thousand Two Hundred Fifty ($294,250.00) Dollars (the "Repayment Amount").

21.     Pursuant to the Guaranty, Nocito and Taub jointly guaranteed repayment of the Repayment Amount to Plaintiffs.

22.     Plaintiffs would not have provided the Loan without the Guaranty and the promises made therein.

23.     Neither Keystone, Nocito or Taub have repaid any part of the Repayment Amount to Plaintiffs.

24.     The failure to repay any portion of the Repayment Amount was specifically delineated as an "Event of Default" pursuant to Section 7(a)(i) of the Note.

25.     Section 9 of the Note provided that, if Defendants committed any Event of Default, they would be "required to pay all costs of collection and reasonable attorneys' fees incurred by Lender in collecting or attempting to collect amounts owed . . ."

26.     Following Plaintiffs providing the Loan to Defendants, they took many actions to prevent Plaintiffs from being able to recover the Repayment Amount including, but not limited to:

    a.  failing to designate a proper Chief Financial Officer of Keystone with access to essential or complete financials;

    b.  failing to record documents evidencing Taub's equity ownership in Keystone over the past two (2) years;

    c.  improperly maintaining records of the equity interests of shareholders on a simple spreadsheet, even though these investment assets exceeded $1,000,000.00;

    d.  appointing Board Members of Keystone as gifts to persons with no corporate formality, no vote and no consideration of their qualifications;

    e.  failing to implement proper methods of corporate governance in accordance with minimum business standards;

4

f.  knowingly permitting convicted felons (such as Nocito and his son, Frank Nocito, Jr.) to operate Keystone, manage the books and records and negotiate various contracts with important business partners and investors;

g.  failing to disclose the criminal history of Nocito to investors or company personnel;

h.  misrepresenting to investors that their loans made to Keystone were "guaranteed" and/or will "convert to equity," causing investors to loan millions of dollars under false pretenses;

i.  providing knowingly false and differing versions of Keystone's financial records, which contained false and misleading information used to perpetrate fraud upon unknowing investors; and

j.  misrepresenting to investors that "liquidity was imminent, and patience would be rewarded" with substantial returns.

27.    Taub, personally, failed to deposit funds from the Loan into Keystone's accounts and, instead, converted them for personal benefit.

## AS AND FOR A FIRST CLAIM
### (Breach of Contract)

28.    Plaintiffs reallege and incorporate as if fully stated herein each and every allegation contained above and incorporate the same herein by this reference as though set forth in full.

29.    The Note and Guaranty were binding agreements between Plaintiffs and Defendants.

30.    The Note and Guaranty were supported by consideration.

31.    By paying the Loan, Plaintiffs complied with their obligations pursuant to the Note and Guaranty.

32.    By failing to pay the Repayment Amount, Defendants have breached their obligations pursuant to the Note and Guaranty.

33.     As a result of Defendants' breaches, Plaintiffs have been damaged.

34.     Accordingly, Plaintiff is entitled to an award of damages to be determined at trial, but not less than Two Hundred Ninety-Four Thousand Two Hundred Fifty ($294,250.00) Dollars, plus interest, costs, expenses and attorney's fees.

## AS AND FOR A SECOND CLAIM
### (Fraud)

35.     Plaintiffs reallege and incorporate as if fully stated herein each and every allegation contained above and incorporate the same herein by this reference as though set forth in full.

36.     In order induce Plaintiffs to enter into the Loan, Defendants, through Taub, represented that, in exchange for the Loan, Plaintiffs would be repaid not less than double the amount of the Loan, a material misrepresentation of fact.

37.     Taub represented to Plaintiffs that entering into the Loan with Defendants was safe.  Knowing that Nocito had consistently defrauded investors in the past in similar schemes and others involving fraudulent letters of credit, this was a material misrepresentation of fact.

38.     Defendants' promises to pay the Repayment Amount by executing the Note and Guaranty were material misrepresentations of fact.

39.     Even after Defendants' default, on multiple occasions, Taub and Nocito promised to pay the Repayment Amount.

40.     On September 18, 2019, Taub wrote:

> I appreciate your due diligence. FRANK and I are now in Tanzania closing the deal. It was delayed a couple of days due to a new tax which was imposed. We would probably be closing this by the end of the week and we will have the wire to you at the beginning of next week.

I'm sorry for the delay but this is Africa and unfortunately delay is to be expected. Let me call you when I get back and we can work out the details.

41.    Defendants did not call or work out any details.

42.    Curiously, later that afternoon, Taub emailed photographs of himself holding (and standing in front of) what appear to be dozens of bars of gold, likely worth hundreds of thousands of dollars, thereby representing to Plaintiffs that this gold would yield in the repayment of monies to Plaintiffs. Yet no payments were made to Plaintiffs and, as such, this was another material misrepresentation of fact.

43.    On or before December 18, 2019, Taub and Nocito indicated that they would repay the loan before the end of 2019, another material misrepresentation of fact.

44.    On January 9, 2020, Nocito represented that he wished to "plan to meet" in order to resolve Defendants' failure to repay the Loan. As he never planned to actually meet or resolve the failure to repay the Loan, this was another material misrepresentation of fact.

45.    On January 14, 2020, Taub represented:

I want to meet with you and [your attorney]. I want this straightened out. I want a frank discussion and a resolution.

I will be on trial on the first part of next week. I will be able to get back to you on Monday when I know my availability for the remainder of the week. No one wants to resolve this more than me.

46.    Taub never intended to meet with Plaintiffs and, in fact, never even contacted them. As such, this was another material misrepresentation of fact.

47.    On January 24, 2020, Nocito wrote:

Be patient  I think we will be ok  Next week Malcom is traveling with me
In Guinea Conakry

> We will contact you when
> We get back on Wednesday

48.     Nocito never intended to contact Plaintiffs and, in fact, never did so.  As such, this was another material misrepresentation of fact.

49.     Between February 28, 2020 and May 31, 2020, Taub made repeated representations (including a handshake) that he had agreed to a settlement of this dispute.  To that end, counsel to Plaintiffs sent settlement documents to be executed by Taub.  Notwithstanding approximately 15 emails, Taub never signed the settlement documents, another material misrepresentation of fact.

50.     On January 27, 2021, in response to counsel to Plaintiff's text message request to contact him regarding the Repayment Amount, Taub responded: "I will.  Hang in there with me."  Taub never contacted said attorney and, as such, this was another material misrepresentation of fact.

51.     Plaintiffs relied on Defendants' misrepresentations by providing the Loan.

52.     Plaintiffs further relied on Defendants' misrepresentations by not taking any action to recover the Repayment Amount.

53.     Plaintiffs' reliance on Defendants' misrepresentations was reasonable.

54.     As a result of Plaintiffs providing the Loan and not being paid the Repayment Amount, Plaintiffs were damaged.

55.     Accordingly, Plaintiffs are entitled to an award of damages to be determined at trial, but not less than Two Hundred Ninety-Four Thousand Two Hundred Fifty ($294,250.00) Dollars, plus interest, costs, expenses and attorney's fees.

## AS AND FOR A THIRD CLAIM
### (Conversion)

56.     Plaintiffs reallege and incorporate as if fully stated herein each and every allegation contained above and incorporate the same herein by this reference as though set forth in full.

57.     As detailed above, the Loan was to be provided for Keystone's use.

58.     The Repayment Amount was to be provided to Plaintiffs.

59.     Instead, Taub took the Repayment Amount and used it for personal benefit.

60.     The Repayment Amount is rightfully owned by Plaintiffs.

61.     Plaintiffs had a right of possession in the Repayment Amount.

62.     Taub's possession and use of the Repayment Amount was not authorized.

63.     Taub's actions were to the exclusion of Plaintiffs.

64.     As a result of the conversion by Taub, said parties are liable to Plaintiffs in an amount not yet determined but believed to be in excess of Two Hundred Ninety-Four Thousand Two Hundred Fifty ($294,250.00) Dollars plus interest, costs, expenses and attorney's fees.

## AS AND FOR A FOURTH CLAIM
### (Unjust Enrichment)

65.     Plaintiffs reallege and incorporate as if fully stated herein each and every allegation contained above and incorporate the same herein by reference as though set forth in full.

66.     By accepting the Loan from Plaintiff and not providing the Repayment Amount, Defendants were unjustly enriched.

67.     Defendants' enrichment was at the expense of Plaintiffs, who have been denied use of the Repayment Amount.

68.     It is against equity and good conscience to permit Defendants to retain the Repayment Amount.

69.     Accordingly, Plaintiffs are entitled to an award of damages to be determined at trial, but not less than Two Hundred Ninety-Four Thousand Two Hundred Fifty ($294,250.00) Dollars, plus interest, costs, expenses and attorney's fees.

## AS AND FOR A FIFTH CLAIM
### (Violation of New York State Debtor-Creditor Law)

70.     Plaintiffs reallege and incorporate as if fully stated herein each and every allegation contained above and incorporate the same herein by this reference as though set forth in full.

71.     In order to prevent Plaintiffs from recovering the Repayment Amount, Defendants transferred monies out of Defendants' various bank accounts and conveyed them to other persons and entities not a party to this lawsuit.

72.     Such conveyances were made while one or more of the Defendants were insolvent or were rendered insolvent as a result thereof.

73.     Such conveyances were made without fair consideration.

74.     Plaintiffs were creditors at the time of such conveyances.

75.     When making these conveyances, Defendants knew that they would incur debts beyond their ability to pay as they matured.

76.     The conveyances had value of which Plaintiffs could have realized at least a portion of their claims.

77.     The conveyances were transferred or otherwise disposed of by Defendants.

78.     The conveyances were made with the intent to defraud Defendants.

79.     These constitute violations of New York State's Debtor-Creditor Law, §270, *et seq*.

80.     Accordingly, Plaintiffs are entitled to an award of damages to be determined at trial, but not less than Two Hundred Ninety-Four Thousand Two Hundred Fifty ($294,250.00) Dollars, plus interest, costs, expenses and attorney's fees.

## AS AND FOR A SIXTH CLAIM
### (Injunctive Relief)

81.     Plaintiffs reallege and incorporate as if fully stated herein each and every allegation contained above and incorporate the same herein by this reference as though set forth in full.

82.     Plaintiffs are being irreparably harmed by Defendants as Defendants continue to transfer monies out of Defendants' accounts.

83.     As detailed above, Plaintiffs are likely to succeed on the merits of this case.

84.     The balance of hardships is tipped decidedly toward Plaintiffs, as they are losing significant monies and could suffer a total loss of the Repayment Amount as a result of Defendants' acts.

85.     As a result of the foregoing, Defendants should be restrained from transferring any monies out of any of their accounts or otherwise disposing of any assets.

## AS AND FOR A SEVENTH CLAIM
### (Punitive Damages)

86.     Plaintiffs reallege and incorporate as if fully stated herein each and every allegation contained above and incorporate the same herein by this reference as though set forth in full.

87.     Defendants' actions were solely designed to afford Defendants personal gain to the detriment of Plaintiffs.

88.     Defendants' actions constitute a conscious and deliberate disregard of the interests of others.

89.     Defendants' actions were willful and wanton.

90.     Defendants' actions were close to criminality.

91.     Defendants' actions were reckless and of a criminal nature.

92.     Defendants' actions were malicious.

93.     Defendants' actions were gross and outrageous.

94.     As a result of the foregoing, Plaintiffs should be awarded punitive damages in excess of Ten Million ($10,000,000.00) Dollars

## DEMAND FOR JURY TRIAL

95.     Plaintiffs hereby demand a jury trial on all claims with respect to which they have a right to jury trial.

WHEREFORE, Plaintiffs demands judgment against Defendants as follows:

(1)     On the First Claim, in an amount not yet determined, but believed to be in excess of Two Hundred Ninety-Four Thousand Two Hundred Fifty ($294,250.00) Dollars.

(2)     On the Second Claim, in an amount not yet determined, but believed to be in excess of Two Hundred Ninety-Four Thousand Two Hundred Fifty ($294,250.00) Dollars.

(3)     On the Third Claim, in an amount not yet determined, but believed to be in excess of Two Hundred Ninety-Four Thousand Two Hundred Fifty ($294,250.00) Dollars.

(4)     On the Fourth Claim, in an amount not yet determined, but believed to be in excess of Two Hundred Ninety-Four Thousand Two Hundred Fifty ($294,250.00) Dollars.

(5)     On the Fifth Claim, in an amount not yet determined, but believed to be in excess of Two Hundred Ninety-Four Thousand Two Hundred Fifty ($294,250.00) Dollars.

(6)     On the Sixth Claim, for a temporary and permanent injunction.

(7)     On the Eighth Claim, punitive damages in excess of Ten Million ($10,000,000.00) Dollars.

TOGETHER with such other or further relief, including an award of costs, disbursements and reasonable attorney's fees, and such other and further relief as this court deems just and proper.

Dated: Garden City, New York
        August 2, 2021

                                        Respectfully submitted,

                                        _____
                                        Michael J. Romano, Esq.
                                        ROMANO & ASSOCIATES
                                        *Attorneys for Plaintiffs*
                                        400 Garden City Plaza, Suite 432
                                        Garden City, New York 11530
                                        (516) 248-8880

DEFENDANT'S ADDRESSES:

Keystone Capital Corporation
275 Post Road East, Suite 10, #5189
Westport, CT  06881

Frank Nocito
c/o Keystone Capital Corporation
275 Post Road East, Suite 10, #5189
Westport, CT  06881

Malcom Taub
c/o Taub & Lewis LLP
215 Lexington Avenue
New York, New York 10016