USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 06/15/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SWEET BABY LIGHTNING ENTERPRISES
LLC and JOHN SLATER,

                      Plaintiffs,

                      v.

KEYSTONE CAPITAL CORPORATION,
FRANK NOCITO and MALCOLM TAUB,

                      Defendants.

No. 21-CV-6528 (RA)

MEMORANDUM
OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiffs Sweet Baby Lightning Enterprises LLC and John Slater (collectively, "Plaintiffs") brought this action against Defendants Keystone Capital Corporation, Frank Nocito, and Malcolm Taub (collectively, "Defendants"), raising claims arising from Defendants' alleged failure to repay a loan. Now before the Court is Defendants' motion to dismiss the Complaint and to strike certain allegations in the Complaint.[1] For the reasons that follow, the motion to dismiss is granted, albeit with leave to amend.

## BACKGROUND

The Court draws the following facts from Plaintiffs' Complaint ("Compl.") and from Exhibit A to the Hiller Declaration, which is a copy of the loan agreement and personal guaranties.[2]

Plaintiff Sweet Baby Lightning Enterprises is a North Carolina limited liability company whose sole member is Plaintiff John Slater, a North Carolina resident. Compl. ¶¶ 2-3. Defendant

---

[1] On October 27, 2021, the Court granted Defendants' motion to stay discovery.

[2] In addition to the allegations in the Complaint, the Court may consider "documents . . . incorporated in [the Complaint] by reference," *Brass v. Am. Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993), such as the loan agreement and personal guaranties that are the subject of this dispute.

Frank Nocito is the President and CEO of Defendant Keystone Capital, a Connecticut corporation; Defendant Malcolm Taub is an attorney who represents Keystone Capital. *Id.* ¶¶ 4-8. Pursuant to a promissory note dated August 21, 2019, Plaintiffs agreed to loan $100,000 to Keystone Capital. *Id.* ¶ 14; Hiller Dec. Ex. A ("loan contract").³ "[I]n return for" this loan, Keystone "promise[d] to pay to the order of Lender the principal sum of $200,000"—in other words, double the amount loaned. *Id.* § 1. The loan's maturity date was September 15, 2019, just 25 days after the date of execution. *Id.* § 2. Although the loan contract stated that the "interest rate shall be Eight percent (8%) per annum after the maturity date," it "recognized that the loan must be retired on or before [the maturity date of] September 15, 2019." *Id.* § 3. It then repeated that, "[a]ssuming $100,000 due under the Loan has been delivered to and paid to Borrower prior to August 22, 2019 then Borrower shall re-pay principal and interest by delivering $200,000 in one lump sum to Lender, no later than September 15, 2019." *Id.* § 4. The loan contract also described a "late fee" of 5% in the event the lender accepted late payment, and provided that the borrower would be required to pay "reasonable attorneys' fees incurred by Lender in collecting or attempting to collect amounts owed." *Id.* §§ 6, 9. Finally, the loan contract included a "loan charges" provision stating that, "[i]f the Loan is subject to a law that sets maximum loan charges, and that law is finally interpreted so the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then . . . any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit." *Id.* § 14. Both Nocito and Taub executed a personal guaranty on the loan. Compl. ¶ 21; Hiller Dec. Ex. A at 5-6.

---

³ Defendants assert that Plaintiffs fail to prosecute this case in the name of a real party in interest, because the corporate lender named in the promissory note—"SBL Enterprises"—is a different company than Plaintiff "Sweet Baby Lightning Enterprises," as indicated by records from the North Carolina Secretary of State. Loan Contract at 1; Hiller Dec. Exs. D, E. Because the Court dismisses this action on other grounds, it need not consider this alternative argument, and assumes for purposes of this motion that the corporate Plaintiff is the same entity as the corporate entity named in the promissory note.

2

According to Plaintiffs, Defendants have failed to repay any portion of the loan. Compl. ¶ 23. The Complaint narrates Plaintiffs' efforts to obtain payment following the loan's maturity date and Defendants' evasive responses. Specifically, Plaintiffs describe exchanges in which Defendants suggested that repayment was imminent because they were "now in Tanzania closing the deal"; explained that "this is Africa and unfortunately delay is to be expected"; and sent Plaintiffs a photograph of Taub holding "what appear to be dozens of bars of gold . . . thereby representing to Plaintiffs that this gold would yield in the repayment of monies to Plaintiffs." *Id.* ¶¶ 40-42. Defendants apparently repeatedly promised to either repay the loan or otherwise settle the dispute as late as January 2021, but never did so. *Id.* ¶¶ 43-50.

Plaintiffs also allege that Defendants "took many actions to prevent Plaintiffs from being able to recover the Repayment Amount." *Id.* ¶ 26. These actions included "failing to designate a proper Chief Financial Officer of Keystone"; "failing to record documents evidencing Taub's equity ownership in Keystone"; "appointing Board Members of Keystone as gifts to persons with no corporate formality, no vote and no consideration of their qualifications"; "failing to implement proper methods of corporate governance"; "knowingly permitting convicted felons (such as Nocito and his son, Frank Nocito, Jr.) to operate Keystone" and "failing to disclose the criminal history of Nocito"; "misrepresenting to investors that their loans made to Keystone were 'guaranteed' and/or will 'convert to equity,' causing investors to loan millions of dollars under false pretenses"; "providing knowingly false and differing versions of Keystone's financial records"; and "misrepresenting to investors that 'liquidity was imminent, and patience would be rewarded' with substantial returns." *Id.* They also allege that "Taub, personally, failed to deposit funds from the Loan into Keystone's accounts and, instead, converted them for personal benefit." *Id.* ¶ 27.

Plaintiffs bring claims for breach of contract, fraud, conversion, unjust enrichment, violation of the New York debtor-credit law, injunctive relief, and punitive damages. On each of their substantive claims, they seek $294,250.00 in damages—a figure that purportedly represents the sum of the $100,000 loaned; interest at an 8% rate; combined late fees set at 5% per month; "actual bridge costs" totaling $35,000; and attorneys' fees of $35,000. *Id.* ¶¶ 14-20. They also seek ten million dollars in punitive damages. *Id.* at 13.

## LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *id.*; claims that are merely "conceivable" or "consistent with" liability are insufficient, *Twombly*, 550 U.S. at 545, 570. In evaluating a motion to dismiss under Rule 12(b)(6), a court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). The Court need not, however, credit "threadbare recitals of the elements of the cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.[4]

Under Federal Rule of Civil Procedure 12(f), a court may, in its discretion, "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Although "[m]otions to strike are generally disfavored," they may be granted if "the matter

---

[4] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

asserted clearly has no bearing on the issue in dispute." *Long v. Marubeni Am. Corp.*, 406 F. Supp. 2d 285, 303 (S.D.N.Y. 2005).

## DISCUSSION

### I.     Motion to Dismiss

Defendants argue that the loan contract is unenforceable in its entirety because it charges an interest rate that is in excess of New York's criminal usury rate.[5]  The Court agrees.

In *Adar Bays, LLC v. GeneSYS ID, Inc.*, 179 N.E.3d 612 (N.Y. 2021), the New York Court of Appeals, in response to a certified question, held that a loan "contract is void *ab initio* pursuant to N.Y. Gen. Oblig. Law § 5-511" when "the interest charged on [the] loan is determined to be criminally usurious under N.Y. Penal Law § 190.40"—that is, when the interest rate on a loan is set at or equivalent to 25% per year. *Id.* at 614; N.Y. Penal L. § 190.40.  The Court of Appeals endorsed a broad definition of "interest," explaining that New York's "usury statutes define interest to include all collateral exchanges of money or property"; accordingly, "all consideration to be paid in exchange for a loan should be valued when determining if a transaction is usurious." *Id.* at 623.  A corporation may successfully raise a criminal usury defense to void a loan, as may guarantors of a corporate borrower. *See* 179 N.E.3d at 616, 620-21; *Fred Schutzman Co. v. Park Slope Advanced Med., PLLC*, 128 A.D.3d 1007, 1008 (N.Y. App. Div. 2015).

"To successfully raise the defense of usury" and thus establish that a loan is void, "a debtor must allege and prove by clear and convincing evidence that a loan or forbearance of money, requiring interest in violation of a usury statute, was charged by the holder or payee with the intent to take interest in excess of the legal rate." *Blue Wolf Cap. Fund II, L.P. v. Am. Stevedoring Inc.*,

---

[5] The loan contract's New York choice of law provision, *see* Loan Contract § 11, supports the application of New York law to construe the contract, including the question of its enforceability.  *See 19 Recordings Ltd. v. Sony Music Ent.*, 97 F. Supp. 3d 433, 438 n.4 (S.D.N.Y. 2015).  The parties also appear to agree that New York law applies, which is itself sufficient to determine choice of law.  *See Arch Ins. v. Precision Stone*, 584 F.3d 33, 39 (2d Cir. 2009).

105 A.D.3d 178, 183 (N.Y. App. Div. 2013). This showing can be made on "the four corners of the loan agreement." *See id.*

Defendants have made such a showing here. The loan contract plainly states that "[a]ssuming $100,000 due under the Loan has been delivered to and paid to Borrower prior to August 22, 2019 then Borrower shall re-pay principal and interest by delivering $200,000 in one lump sum to Lender, no later than September 15,." Loan Contract § 4. This constitutes an effective interest rate of 100% during the roughly three-week loan term—well in excess of the criminal usury rate of 25% per year or the equivalent thereof. The fact that the loan purports to characterize the interest rate as merely 8% does not save the contract, because the Court must consider "all consideration to be paid in exchange for a loan," not just consideration that is explicitly labeled as interest. *Adar Bays*, 179 N.E.3d at 623; *see also Blue Wolf*, 105 A.D.3d at 183 (holding that a $200,000 deposit "constitute[d] additional interest" on top of a stated interest rate of 12%).[6] Nor is Plaintiffs' argument that they lacked the requisite intent availing: "intent will be implied and usury will be found as a matter of law" as long as "usury can be gleaned from the face of an instrument," *Blue Wolf*, 105 A.D.3d at 183. In other words, "a loan is usurious if the lender intends to take and receive a rate of interest in excess of that allowed by law even though the lender has no specific intent to violate the usury laws." *Am. E Grp. LLC v. Livewire Ergogenics Inc.*, No. 18-CV-3969 (GHW), 2020 WL 469312, at *7 (S.D.N.Y. Jan. 28, 2020).

In opposing dismissal, Plaintiffs admit that "the interest effectively charged on the face of the agreement exceeds the criminal usury rate." Opp. MOL at 10.[7] They argue, however, that

---

[6] The Court also notes that the contract provides that the "interest rate shall be Eight percent (8%) per annum after the maturity date, although it is recognized that the loan must be retired on or before September 15, 2019"—a construction that appears to contemplate that this 8% interest rate will never go into effect. Loan Contract § 3.

[7] Although Plaintiffs refer to themselves as "investors" in some of the correspondence they attach to their opposition brief, they do not appear to contest that the subject transaction is a loan, as opposed to a joint venture or other type of agreement that would not be subject to the usury laws. *See Adar Bays*, 179 N.E.3d at 622.

Defendants are estopped from raising a criminal usury defense because they drafted the loan contract, including its interest rate. This argument fails.

Borrowers may be estopped from raising a usury defense when, "as a result of a special relationship existing between the lender and borrower, the borrower induces reliance on the legality of the transaction," *Russo v. Carey*, 271 A.D.2d 889, 890 (N.Y. App. Div. 2000), or when there is "evidence that the defendants set a rate they knew to be usurious for the purpose of avoiding repayment of the loan," *O'Donovan v. Galinski*, 62 A.D.3d 769, 770 (N.Y. App. Div. 2009). Plaintiffs' Complaint, however, is completely devoid of any such allegations. They do not assert that any relationship existed between the parties that might have induced unusual reliance, such as that of "attorney-client, fiduciary or trustee, or a longstanding friendship," *Hufnagel v. George*, 135 F. Supp. 2d 406, 408 (S.D.N.Y. 2001). Nor do they allege that Defendants deliberately set the interest rate in order to avoid repayment or that "the transaction was [otherwise] of [Defendants'] making; that is, that [they] authored the transactional document and utilized a third-party promissory note as a collateral inducement to assure repayment," *Keezing v. Rodriguez*, 196 Misc. 2d 408, 409-10 (N.Y. Sup. Ct. 2003).

Plaintiffs attempt to supplement the insufficient allegations in their Complaint with email communications between the parties that they attach to their opposition brief. Even if the Court were to consider this extrinsic evidence—either as documents that may properly be assessed on a motion to dismiss or by converting this motion into one for summary judgment[8]—those exhibits

---

[8] The Court notes that considering Plaintiffs' extrinsic evidence by converting this motion into one for summary judgment would likely be inappropriate under these circumstances. *See, e.g.*, *Harrell v. New York State Dep't of Corr. & Cmty. Supervision*, No. 15-CV-7065 (RA), 2019 WL 3817190, at *2 n.3 (S.D.N.Y. Aug. 14, 2019) ("Neither party has asked the Court to convert this motion into one for summary judgment, and the Court will not consider these factual allegations raised for the first time in a brief in opposition to a motion to dismiss.").

do not plausibly suggest that the parties shared a special relationship or that Defendants deliberately set the interest rate in order to avoid repayment. The only arguably relevant exhibit is a July 2019 email from Plaintiffs' counsel to one of the individual Defendants, Malcolm Taub, asking Taub to "send [him] the LoC documents in draft so [he] can share with [his] clients." MTD Opp. Ex. 1. But it is far from clear that the "LoC documents" are the same as the loan contract at issue in this case—particularly because other emails discussing those "LoC documents" appear to set the amount of money loaned or credited in euros, not dollars, *see* MTD Opp. Ex. 3. Indeed, a subsequent email from Plaintiffs' counsel to the individual Defendants states, "Please see attached draft Note and Guaranty for your review and comment," which arguably supports the conclusion that *Plaintiffs* drafted the loan agreement. *See* MTD Opp. Ex. 4. Moreover, New York courts have repeatedly instructed that "even if defendant[s] drafted the note, that does not relieve the lender from a defense of usury." *Bakhash v. Winston*, 134 A.D.3d 468, 469 (N.Y. App. Div. 2015). In short, the emails on which Plaintiff relies are insufficient to support the presence of circumstances giving rise to estoppel. *Cf. Russo*, 271 A.D.2d at 890 (finding a triable issue of fact regarding estoppel when the "plaintiff alleged that he loaned the money to defendant, his friend, due to her husband's impending open heart surgery, that the promissory notes were prepared by defendant, that defendant fixed the rate of return and that he relied upon defendant's experience in loan transactions"); *Angelo v. Brenner*, 90 A.D.2d 131, 132 (N.Y. App. Div. 1982) (finding a triable issue of fact regarding estoppel when the plaintiff "was induced to enter into the transaction out of sympathy for defendant's description of his urgent financial plight and the personal problems of his son," was "totally inexperienced in business matters and relied upon defendant's

friendship and his superior expertise as a real estate broker and teacher of real estate," and "when defendant suggested a 14% rate . . . asked him whether it was legal and he intentionally misrepresented that it was").

Nor may Plaintiffs seek only the enforcement of the non-usurious portions of the loan contract, because a contract that is deemed void in its entirety cannot be severed to retain only its legal portions.  *See Adar Bays*, 179 N.E.3d at 621 (reaffirming that "loans proven to violate the criminal usury statute are subject to the same consequence as any other usurious loans: *complete invalidity* of the loan instrument") (emphasis added).  For similar reasons, the loan contract's apparent usury-savings clause, Loan Contract § 14, is ineffective.  *See Livewire*, 2020 WL 469312, at *1, *8 n.13 (explaining that a "usury-savings clause in [a] note is ineffective under New York law, [such that] the note is criminally usurious on its face" and collecting New York cases so holding); *see also Carruthers v. Flaum*, 365 F. Supp. 2d 448, 468 (S.D.N.Y. 2005) ("[W]here the main objective of an agreement is illegal—here, providing a loan at an unlawful interest rate— courts will not sever and enforce incidental legal clauses.").  In sum, New York's clearly stated law requires the Court to conclude that "the transaction is entirely void, preventing [Plaintiffs'] recovery of both principal and interest."  *Adar Bays*, 179 N.E.3d at 620; *see also Adar Bays, LLC v. GeneSYS ID, Inc.*, 28 F.4th 379, 382 (2d Cir. 2022) (mem.) (remanding to the district court following the Court of Appeals' ruling and instructing that "should the district court determine on remand that the Note was usurious, it should find the Note void and unenforceable").

Plaintiffs' remaining claims for fraud, conversion, and unjust enrichment must also fail. First, the fraudulent statements Plaintiffs allege are Defendants' representation that "Plaintiffs would be repaid not less than double the amount of the Loan"; that "entering into the Loan with Defendants was safe"; and that Defendants promised "to pay the Repayment Amount," both before

9

and after the loan's maturity date had passed. Compl. ¶¶ 35-49. These statements, however, consist merely of promises to perform under the contract, which may not support a fraud claim. *See, e.g.*, *Ithaca Cap. Invs. I S.A. v. Trump Panama Hotel Mgmt. LLC*, 450 F. Supp. 3d 358, 370 (S.D.N.Y. 2020) ("A party's mere promise to perform its contractual obligations, even if knowingly false at the time of making, is not enough to support a claim of fraud under New York law."). Second, Plaintiffs are precluded from pursuing an unjust enrichment claim, given the Court's finding that the loan contract is void for usury. *See Livewire*, 2020 WL 469312, at *12 (relying on *Blue Wolf* in holding that an unjust enrichment claim must be dismissed on the basis of unclean hands when the plaintiff had charged criminally usurious interest). Finally, Plaintiffs' conversion claim must be dismissed as duplicative of the dismissed breach of contract claim, because it is based on the same facts and seeks the same relief.[9] *See Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 204 (S.D.N.Y. 2011) (explaining that a "conversion claim may only succeed . . . if a plaintiff alleges wrongs and damages distinct from those predicated on a breach of contract").[10] Plaintiffs' reliance on *Global View Ltd. Venture Capital v. Great Central Basin Exploration, L.L.C.*, 288 F. Supp. 2d 473 (S.D.N.Y. 2003) is misplaced, as the court there confirmed that it would "not deem a plaintiff to have immediate possessory rights over money where that money represents damages in contract," and accordingly dismissed a conversion claim that was "dependent on the finding that [the defendant] breached the Loan Agreement," *id.* at 479.

---

[9] This is so even though the contract is invalid and unenforceable. *See Nasso v. Bio Reference Laboratories, Inc.*, 892 F. Supp. 2d 439, 454 (E.D.N.Y. 2012).

[10] As Defendants rightly note, Plaintiffs failed to defend their claims for violation of the New York Debtor-Creditor Law, injunctive relief, and punitive damages, and have thus abandoned them. *See Felix v. City of New York*, 344 F. Supp. 3d 644, 654-55 (S.D.N.Y. 2018). Moreover, the final two "claims" describe forms of relief, not causes of action.

Accordingly, the Court grants Defendants' motion to dismiss in its entirety. Given its dismissal, the Court denies the motion to strike certain allegations in the Complaint as moot.

## II.     Leave to Amend

"Ordinarily a plaintiff should be granted leave to amend at least once after having the benefit of a court's reasoning in dismissing the complaint." *Obra Pia Ltd. v. Seagrape Invs. LLC*, No. 19-CV-7840 (RA), 2021 WL 1978545, at *3 (S.D.N.Y. May 18, 2021). Although Defendants have successfully shown that the loan contract is void for usury and Plaintiffs failed to plausibly allege facts that might give rise to estoppel, this does not necessitate a finding that amendment would be futile. To the contrary, there is a possibility, even if slight, that Plaintiffs can plead additional facts that would be consistent with their current Complaint and that would allow them to defeat Defendants' usury defense, at least at the motion to dismiss stage. For instance, Plaintiffs may be able to plausibly allege that the contract at issue is not a loan, but rather a joint venture;[11] that Defendants intentionally set the loan's interest rate in order to avoid repayment; or that a special relationship did indeed exist between the parties. Accordingly, the Court grants leave to amend, to the extent Plaintiffs have a good-faith basis to do so.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted. The Clerk of Court is respectfully directed to terminate the motion pending at docket number 17. If Plaintiffs intend

---

[11] To be sure, Plaintiffs would face an uphill battle on such a theory, given that their current complaint explicitly refers to the contract as a "loan" and that the contract refers to itself as a "loan"; uses terms such as "promissory note," "interest," "maturity date," "lender," and "borrower"; and does not expose Plaintiffs to any risk based on the value of any underlying assets. *See Adar Bays*, 179 N.E.3d at 622 ("Adar Bays is a lender, GeneSYS a borrower, and the parties executed a traditional loan instrument—the note—constituting a promise by GeneSYS to repay the loaned principal, plus interest, in some form, by a maturity date. The transaction, at its inception, was plainly a loan."); *id.* (explaining that "parties who are not directly exposed to market risk in the value of the underlying assets are likely to be lenders, not investors").

11

to file an Amended Complaint, they shall do so by no later than June 29, 2022. Failure to file an Amended Complaint by that date will result in dismissal of this case with prejudice.

SO ORDERED.

Dated:   June 15, 2022
         New York, New York

_____
Ronnie Abrams
United States District Judge